**HENRY S. MILLER RESIDENTIAL SERVICE CORPORATION, Appellant,**

v.

**Roland S. ARTHUR, Appellee.**

**No. 05–83–00208–CV.**

Court of Appeals of Texas, Dallas.

May 4, 1984.

L. Randall Yazbeck, Barnett M. Goodstein, Dallas, for appellant.

Dennis G. Brewer, Sr., Vincent R. Kirst, Irving, for appellee.

Before CARVER, STOREY and WHITHAM, JJ.

STOREY, Justice.

Henry S. Miller Residential Service Corporation, a real estate broker, sued Roland S. Arthur, the homeowner, to recover the broker's commission claimed to be owing from the sale of Arthur's home. Miller has appealed from a take-nothing judgment asserting thirty-one points of error, each attacking a fact finding made by the trial

court as being unsupported by evidence, or alternatively, as being against the great weight and preponderance of the evidence. We conclude that the ultimate issue of fact found by the court, namely that Miller was not the procuring cause of the sale, is supported in the evidence and, consequently, affirm.

The undisputed evidence demonstrates that Miller and Arthur entered into an exclusive listing agreement for the sale of Arthur's home. The listing was for a stated term of 120 days commencing on June 5, 1980. Within the stated term a "cooperating broker," James Graham, showed the home to Tilmon Kreiling, then a prospective purchaser. On September 27, 1980, still within the stated term, Graham submitted an offer in writing on behalf of Kreiling. The offer differed in material respects from the listing agreement. Arthur asked $635,000 for the home by itself, while Kreiling's offer consisted of $600,000 for the home and all personal property therein, with Arthur assuming the cost of substantial repairs. The offer was rejected by Arthur. A few days later on October 4, 1980, the stated term of the listing agreement having ended, Arthur announced that he was removing the home from the market. About five and one-half months later, through direct negotiations, Arthur sold the home to Kreiling. The terms of sale were substantially the same as were called for in the listing agreement.

Miller contends that, despite the end of the stated term of the listing agreement some five and one-half months before the sale, it is nevertheless entitled to a commission on the sale. It relies on the following provision of the listing agreement:

> Owner and listing broker specifically agree that listing broker shall receive the commission provided in paragraph 10 if the property is sold after the termination of this agreement while not covered by an exclusive listing agreement with another member of the Multiple Listing Service of the Greater Dallas Board of Realtors, Inc. provided (1) purchaser was introduced to the property by personal accompaniment of listing broker or cooperating broker prior to the termination of this agreement, and (2) *the services of listing broker and/or cooperating broker are the procuring cause of the sale of the property on terms acceptable to Owner.* (Emphasis supplied.)

The evidence clearly establishes that the purchaser Kreiling was "introduced to the property" by the cooperating broker, Graham, within the stated term of the listing agreement. The question presented is whether either the listing broker, Miller, or the cooperating broker, Graham, was the procuring cause of the sale. The trial court concluded that neither was the procuring cause and it is this finding that Miller attacks on appeal as having no support in the evidence and, alternatively, as being against the great weight and preponderance of the evidence.

When the court is the trier of fact, as it was here, findings of fact cannot be set aside if there is any evidence of a probative nature to support them, and a court of appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Ray v. Farmers State Bank of Hart,* 576 S.W.2d 607, 609 (Tex.1979). Furthermore, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *General Motors Corporation v. Grizzle,* 612 S.W.2d 275, 278 (Tex.Civ.App.—Waco 1981, no writ). If the evidence is conflicting, we are bound by the findings of the trial court. *Ray,* 576 S.W.2d at 610.

Miller had the burden of proving at trial that it introduced the purchaser to the property during the stated term of the agreement. This was established by the evidence. However, it is clear that the agreement placed an additional burden of proof upon Miller beyond mere "introduction to the property" when the sale occurred after the stated term of the agreement. Miller must also show that it was the procuring cause of the sale. We are

persuaded that Miller did not sustain its burden of proof in this regard.

Graham, the cooperating agent, testified that after Kreiling's original offer was rejected, he, Graham, had no further contacts with Arthur and in fact abandoned any further attempt to sell the Arthur home. Kreiling testified that neither he nor anyone with his authority contacted Arthur after his original offer was rejected. Kreiling further testified that he was in no position to deal with the Arthur home before his direct negotiation with Arthur because at one time in the intervening period he had an outstanding offer in writing to purchase another home and, except for that offer, he had abandoned his search for a home and was out of the market.

The only evidence of any contact with Arthur after his rejection of the original Kreiling offer came through the testimony of Ling, an agent of Miller, who signed the listing agreement. Ling testified that after rejection of the Kreiling offer, she telephoned Arthur and advised him that Kreiling was willing to continue negotiations upon terms substantially the same as contained in the listing agreement. This testimony contradicted that of Kreiling who asserted that no one with his authority contacted Arthur after the original offer was rejected. Indeed, it was also inconsistent with Ling's own admission that she never at any time met or talked to Kreiling. Further, Ling's testimony was disputed by Arthur who asserted that no one contacted him with regard to a Kreiling offer after his initial rejection. The trial court was of course authorized to accept or reject some, all, or none of the disputed testimony. *See generally General Motors*, 612 S.W.2d at 278. It apparently rejected the testimony of Ling. Under this state of the evidence the only performance by Miller was the "introduction of Kreiling to the property" during the stated term of the listing agreement. We hold this to be insufficient to sustain Miller's burden of proving by a preponderance of the evidence that it was the procuring cause of the sale.

We are not unmindful of the holding in *Jones v. Torrance*, 141 S.W.2d 1007, 1011 (Tex.Civ.App.—Waco 1940, writ dism'd), and similar holdings relied upon by Miller that "... if the agent brings the parties together and they then, independently of the acts of the agent, continue negotiations until the trade is consummated, the agent is, as a matter of law, the procuring cause of the sale." The basis of the holdings in *Jones* and related cases seems to be that the parties, buyer and seller, "continue negotiations until the trade is consummated." Indeed, the court in *Jones* concluded that the evidence in the case did not raise an issue of new and independent cause. *Id.*

Here, the trial court found that the sale resulted from a new and independent intervening cause. This finding is well supported by the testimony of at least three parties to the transaction—the seller, buyer, and cooperating agent—all of whom acknowledged that all negotiations and efforts at sale had ended when the stated terms of the listing agreement ended. We are persuaded that the circumstances of this case bring it within the rule adopted by this court in *Maberry v. Julian*, 479 S.W.2d 770 (Tex.Civ.App. Dallas 1972, writ ref'd n.r.e.). There the court stated at 774:

A different ... rule prevails where the broker's effort with a particular buyer has, after fair opportunity and without any fault of the owner, *come to naught resulting in the failure and termination of his negotiation;* and, later, the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker cannot be justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account. (Citing *Pryor v. Jolly*, 91 Tex. 86, 40 S.W. 959.)

We conclude that the evidence is sufficient to support the trial court's finding that Miller was not the procuring cause of the sale, and, consequently, affirm.